JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
DAVID G. ROBINS, IDAHO STATE BAR NO. 8494
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>vs.<br><br>TYSON JAMES JARDINE,<br><br>          Defendant. | Case No. 1:24-mj-00238-DKG<br><br>**MEMORANDUM IN SUPPORT OF DETENTION** |

The United States of America, by and through Joshua D. Hurwit, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, hereby files this MEMORANDUM IN SUPPORT OF DETENTION.

## I.   **PROCEDURAL BACKGROUND**

On September 26, 2024, this Court issued a warrant based on a criminal complaint. (ECF No. 3). After issuance of the arrest warrant, law enforcement apprehended the Defendant. The Defendant had his initial appearance before this Court on September 30, 2024. The Government moved for detention. (ECF No. 5). The Defendant resists this motion. The Government now submits this memorandum in support of detention.

MEMORANDUM IN SUPPORT OF DETENTION – 1

II.     **FACTUAL PROFFER**

      A.  <u>This case started with a domestic dispute. On July 13, 2024, the Defendant's wife contacted law enforcement. She reported that the Defendant had previously threatened to kill her, strangled her, and battered her.</u>

The Defendant's wife called law enforcement to report a domestic dispute. She told law enforcement that on July 7, 2024, she found meth and a pipe in their garage. She knew this to be the Defendant's meth based on his drug history. She confronted him. She told him she planned on a divorce. The Defendant left the home. Thereafter, the Defendant reached out to his wife. They agreed that the Defendant could be around his four-year-old son, but only if he agreed to urinalysis testing. The Defendant would intermittently visit the house over the next week.

On July 13, 2024, the Defendant was present with his wife at their home in Kuna. While there, they argued about the urinalysis testing. Given that his four-year-old son was present, his wife wanted the Defendant to provide urine for a test. They argued over testing. The argument escalated to the Defendant threatening to kill his wife while smashing a glass on the ground.

Law enforcement asked the Defendant's wife about their domestic history. She gave alarming reports. She reported that the Defendant had threatened to kill her several times in the past. She reported that the Defendant has been using methamphetamine for years. She reported that they had many physical altercations that she did not report. The Defendant's wife reported that he had thrown her to the ground, tried to strangle her, and tried to hurt her during prior arguments.

The Defendant had left the residence prior to law enforcement's arrival. Law enforcement discussed a safety plan with the Defendant's wife. The Defendant's wife and child stayed in a hotel that night to avoid the Defendant. Prior to leaving, the Defendant's wife

MEMORANDUM IN SUPPORT OF DETENTION – 2

provided methamphetamine pipes found in the Defendant's garage. Law enforcement took

custody of these pipes, and they appeared as follows:



B.  <u>After the domestic dispute, the Defendant left the residence. On July 24, 2024, the Defendant's wife was cleaning out their house. She found suspicious items that led to the discovery of the Defendant's destructive devices.</u>

On July 24, 2024, the Defendant's wife (through another person) contacted law

enforcement and reported that they found potential bomb-making items or a meth lab at the

Defendant's residence.

The Defendant's wife consented to a search of the property. There, in the Defendant's

garage, law enforcement found three destructive devices. Bomb technicians from law

enforcement took the destructive devices to the Boise Police Department gun range, where a

robot designed for handling bombs cut the devices in half. Bomb technicians ignited some of the

powder inside to verify that it was a combustible. It was. Two of the devices were fuzed using

common hobby fuses. This was an explosive item, as caulking surrounded the container with

inset bearing balls. If ignited, the bearing balls would have served as fragmentation to potentially

lethal effect. The third device was a pipe bomb. The fusing device on this bomb were ignition caps placed inside the bomb. The destructive devices appear as follows:



In addition to the destructive devices, law enforcement found many chemicals, some of which can be used in making a destructive device. They appear as follows:



Law enforcement also found inert grenades attached to a ballistics vest. They appear as follows:



Law enforcement also found beakers that can be used to alter chemicals for use in creating destructive devices. They appear as follows:





Law enforcement also found explosive powder (gun powder and black powder). This is relevant, as the Defendant could use this in the construction of destructive devices. These items appear as follows:

 

In addition to devices, law enforcement recovered an instruction manual for making destructive devices. A censored picture of the manual appears as follows:

MEMORANDUM IN SUPPORT OF DETENTION – 6



Law enforcement found highlighted sections inside the manual. In looking at the items in the garage, law enforcement saw that the Defendant was likely following the steps outlined in the manual for explosive construction. For example, the manual advised on how to store methyl nitrate. The Defendant had such bottles with liquid in them (contents unverified at this time). It appears as follows:



MEMORANDUM IN SUPPORT OF DETENTION – 7



Similarly, there was a section on ethylenediamine. The section of the book matches what law enforcement found in the Defendant's garage. It appears as follows:





Law enforcement also recovered blasting caps from the Defendant's garage. In sum, law enforcement not only found destructive devices, but materials used in the creation of destructive devices.

In the garage, law enforcement also found a safe and firearms. They appear as follows:





The firearms recovered include:

- Black Powder Rifle

- .25 caliber semi-automatic handgun

- 40mm Launcher

- Black powder pistol

- Homemade pistol

- Glock Handgun

- Revolver

- Black Powder Rifle

Law enforcement also found hundreds of round of ammunition and several magazines.

    C.    <u>Law enforcement discovered that the Defendant kept a shop and storage shed.
Law enforcement searched these locations and they found alarming items.</u>

The Defendant kept a storage shed in Kuna, Idaho. Law enforcement secured a search warrant for this shed. In it, they found fuses (capable of being used to ignite a bomb), polyethylene powder (a chemical with potential pyrotechnic application), an empty section of PVP pipe with two threaded end caps (a configuration akin to a pipe bomb), and a flash powder M119 booby-trap simulator (a device used with a tripwire to set off a whistling sound). Law enforcement also found chemistry-related items in this storage shed.

The Defendant kept a shop in Kuna, Idaho. Law enforcement secured a search warrant for this shed. In it, they found cylindrical metal pipe, seven AR lower receivers, an AR-15 rifle, suspected silencers (cylindrical metal tubes with threaded ends), and .530 muzzleloader rounds. They also found a lathe which appeared to be used to create firearm suppressors.

    D.    <u>Law enforcement tracked the Defendant to a remote location. They
apprehended him after collisions with law enforcement vehicles.</u>

Given the conduct above, an Idaho judge issued an arrest warrant for the Defendant. Law enforcement set about trying to find him.

MEMORANDUM IN SUPPORT OF DETENTION – 10

To this end, on July 25, 2024, law enforcement contacted the Defendant's mother. During conversation, the Defendant's mother acknowledged that he had a prior methamphetamine addiction and was unsure whether he continues to struggle with such issues. When asked about the Defendant's location, his mother said he was in the mountains but unsure as to the exact location. The Defendant's mother said that the Defendant believed if he came back to Boise, law enforcement would put him in jail and not listen to his side of the story. She was unsure whether he would return to town.

Eventually, law enforcement received credible information that the Defendant was camping in the Pine/Featherville area of Elmore County, Idaho. Surveillance footage from a business in Mountain Home, Idaho corroborated the Defendant's presence in this area.

Give the tip and corroboration, law enforcement was on the lookout for the Defendant in this area. Law enforcement eventually spotted the Defendant's vehicle at an unnamed campground outside of Pine, Idaho. SWAT teams from Ada County were call in to help. While the Ada County SWAT was on the way, law enforcement surveilled the Defendant. They saw the Defendant shooting a suppressed weapon into an unknown area. After SWAT members arrived, law enforcement saw the Defendant leave the campground in his truck. He had a pistol in a holster attached to his hip. Law enforcement, after the Defendant left, entered the campground, and evacuated the civilians to minimize risk to the public. The Defendant eventually returned to the campsite.

There, two SWAT vehicles approached the Defendant's vehicle. One approached from the front, and one was approach from the front. Law enforcement reported that the Defendant saw the SWAT vehicle approaching from the front and he put his truck in reverse. He accelerated quickly and struck the SWAT vehicle staged behind him. After the collision, the

Defendant continued to reverse against the vehicle, with his tires kicking up dust and debris. A few second later, the SWAT vehicle that had been approaching from the front collided with the Defendant's truck, effectively pinching him between the two. The truck stuck between the two SWAT vehicles appears as follows:



Law enforcement took the Defendant into custody at that time.

Law enforcement secured a search warrant for the Defendant campsite. There, they found many firearms in his vehicle and tent. Several of the firearms had suppressors attached to them. They appear as follows:








According to Government databases, the Defendant has never registered any item with the National Firearm Registry and Transfer Record.

        E.  <u>The Defendant has a history of crime, probations violations, and of failure to appear for court.</u>

The Defendant cannot lawfully have firearms. *See* 18 U.S.C. § 922(g)(1). The Defendant has the following prior convictions:

- 2006 – Attempt to elude law enforcement

- 2006 – Carrying a concealed weapon under the influence

- 2007 – Felony possession of a controlled substance

- 2008 – Felony possession of a controlled substance

- 2012 – Manufacturing of a controlled substance

- 2015 – Unlawful possession of a weapon by felon

The Government tried to collect prior police reports. The Government could not get them all prior to this hearing. We did get the report from his 2015 case. In this case, the Defendant

MEMORANDUM IN SUPPORT OF DETENTION – 14

stole a firearm from a residence in Lewiston. After several deceptive stories and multiple denials,

he admitted to stealing a firearm. An excerpt from the report is as follows:

> I asked Jardine where the gun came from and he said Lewiston you said.  I asked Jardine to tell me how the gun got here and he said he didn't know.  I again asked Jardine where the gun came from.  Jardine asked if he could talk to just me outside and we stepped outside.
>
> Jardine stated "yes, I took the gun."  Jardine said he was scared shitless right now.  I explained that I needed to find out what happened and I had all these people saying one thing and Jardine another.  Jardine said he was scared and apologized.  I then stated so you took the pistol from the house there and you had it in your possession the whole time.  Jardine agreed by shaking his head yes.
>
> I told Jardine Officer Truxel could really jam him up on his probation and Jardine stated he knew and that there wasn't any rifles at the residence.  Jardine stated he likes to go kill things and that's it.
>
> Jardine stated he felt bad lying to me.  I asked Jardine to tell me about going to Lewiston.  Jardine said the gun cabinet was unlocked.  Jardine stated he was sitting looking at it someone was coming downstairs and he panicked and put the pistol in his bag.  Jardine stated that he then brought the pistol with him to Donnelly and that it had been in his possession ever since he had taken it from the residence in Lewiston.

The Defendant has had several probation violations among his cases. In addition to

criminal charges, the Defendant has a pending charge for driving without privileges. At the time

of his arrest in this case, the Defendant had a warrant outstanding on this matter.

## F.   The Defendant kept a significant number of firearms.

Law enforcement, during this investigation, contacted the Defendant's ex-wife. She said

that the Defendant believed the Government could not lawfully prevent him from having

firearms. She claimed that he would often "drive around" with firearms. She estimated that the

Defendant had approximately 20 firearms. She took a picture from within the gun safe and sent it

to law enforcement. It appears as follows:



### III.   <u>APPLICABLE LAW</u>

There is a rebuttable presumption that no conditions of release will reasonably ensure the safety of the community in this case. 18 U.S.C. § 3142(e). Assuming the Defendant rebuts the presumption, the Court must order the Defendant detained if there are no conditions that will reasonably ensure the safety of another person or the community. 18 U.S.C. § 3142(f). This finding must be supported by clear and convincing evidence. *Id*. Alternatively, the Court must order the Defendant detained if there are no conditions that will reasonably ensure the Defendant's appearance. *Id*. This finding must be supported by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990). In making this determination, the

Court should consider all the factors identified in 18 U.S.C. § 3142(g). These include the following:

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2) the weight of the evidence against the person;

3) the history and characteristics of the person, including—

    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g)(1)-(4).

## IV.  <u>ANALYSIS</u>

    a. <u>The nature and circumstances of the offense charged supports detention.</u>

The nature and circumstances of this offense support detention. The Defendant had multiple destructive devices. The destructive devices were particularly lethal, in that they could potentially kill at a range of 90 feet. He kept these devices in his home where his child and wife lived. These actions prove a callous disregard for law and safety.

Moreover, the Defendant was sophisticated and committed to criminal conduct. The Defendant's acquisition of the destructive device was not happenstance or opportunistic. The Defendant had a laboratory and manual for bomb making. It appears he was in various stages of making destructive devices. He was using commonly obtained items to this end. His action of

*making* destructive devices (using over the counter items) heightens his community risk, as it reveals a troubling criminal eagerness, willingness, and ability.

Additionally, the Defendant kept a considerable array of weapons. He did not demurely have s small caliber pistol. Rather, he kept an exotic array of weapons, to include a 40 mm launcher. This weapon can be used to launch a variety of uncommon munitions. It appears as follows:



 On other weapons he had apparent suppressors affixed. The quantity and quality of his weapons he kept (unlawfully given his status as a felon), prove a considerable community risk.

The Defendant also presents as a flight risk in this case. He already fled into the mountains after his wife contacted law enforcement. His mother said that the Defendant feared returning to town, given that law enforcement would arrest him. Two law enforcement vehicles had to collide with his vehicle to apprehend him. His flight, both to the mountains and in his attempt to escape, prove he is a flight risk.

MEMORANDUM IN SUPPORT OF DETENTION – 18

The nature of the crime (destructive devices) and circumstances (creation of destructive devices, possession of many suppressed firearms, and flight from law enforcement) make detention proper here.

          b.  <u>The weight of the evidence against the Defendant supports detention.</u>

The weight of the evidence against the Defendant is strong. Law enforcement found the destructive devices in his garage. The corroborating items found in his shop and storage shed further prove the case. The Defendant's flight from law enforcement is consciousness of guilt. The strength of the case supports detention.

          c.  <u>The history and characteristics of the Defendant support detention.</u>

The Defendant has a considerable criminal history. The particulars of his history support detention, as he has a prior conviction for trying to elude law enforcement and had an outstanding warrant at the time he allegedly committed the crimes in this case. He also has a history of stealing firearms and lying to police officers. This, along with his multiple probation violations and a failure to appear for court, underscore the need for detention in this matter.

Additionally, the Defendant has allegedly threatened to kill his wife, beat her, and strangled her. His anger issues imperil the community. His violent behavior, firearm obsession and probable meth addiction all weigh in favor of detention.

Moreover, the Defendant's addiction issues appear stubbornly untreatable. The Defendant has previously undergone a retained jurisdiction program while in custody. He spent about 180 days in confinement with behavioral programming to treat his addiction and criminal thinking. Given his clear relapse and new criminal offenses, he did not capitalize on this treatment.

Lastly, the Defendant told his ex-wife that he did not believe the Government could lawfully deprive him of his firearms. His conduct shows that he truly believes this opinion. This opinion betrays an incorrigible attitude that makes pretrial release too risky in this case.

Given the facts of the case and prior history, the Court should order the Defendant detained in this case.

d.   The Defendant would pose a lethal danger if released.

The nature and seriousness of the threat the Defendant poses is considerable. Between the destructive devices and firearms, the nature is of his threat is lethal. Given this prior criminal records, addiction issues, flight, and violent behavior, the threat is present and serious. He should be detained.

**V.   CONCLUSION**

In sum, the evidence suggests that the Defendant is a drug-addicted bomb-making felon who was repeatedly violent towards his wife. Upon initiation of this case, he fled into the mountains with a bevy of weapons. He tried to drive evasively when confronted by SWAT. He has a lengthy criminal history that includes manufacturing drugs, fleeing law enforcement, not showing up for court, lying to the police, violating probation, and stealing a firearm. The facts of this case strongly call for detention.

For the foregoing facts and analysis, the Defendant should be detained pursuant to 18 U.S.C. § 3142.

//

//

//

//

MEMORANDUM IN SUPPORT OF DETENTION – 20

Respectfully submitted this 3rd day of October, 2024.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:


*/s/ David G. Robins*
DAVID G. ROBINS
Assistant United States Attorney

MEMORANDUM IN SUPPORT OF DETENTION – 21